# Norman Bruce Derr

## v.

# Commonwealth of Virginia

Record No. 910441

November 8, 1991

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.

414

*H. Glenn Goodpasture (Goodpasture & Nuckols*, on brief), for appellant.
*Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

Norman Bruce Derr was tried by a jury and convicted of burglary of a dwelling house while armed with a deadly weapon, rape, forcible sodomy, and abduction. He was sentenced in accordance with the jury's verdicts to life imprisonment on the burglary conviction, to life imprisonment on the rape conviction, to life imprisonment on the sodomy conviction, and to ten years imprisonment on the abduction conviction.

On appeal, Derr challenges the validity of certain searches executed pursuant to search warrants and the sufficiency of the evidence to sustain the convictions.

## I.

The victim, a 56-year-old woman, lived alone in her home at 403 Confederate Boulevard in Fredericksburg. On June 1, 1988, about 10:00 p.m., she locked the doors, turned off the lights downstairs, and went upstairs to her bedroom. While she was in bed watching television, a white male wearing a nylon stocking over his face walked into her bedroom. He was armed with a curved blade knife.

The intruder placed a blindfold over the victim's eyes so that she could not see. He pushed her onto the bed, removed her underwear, and committed an act of cunnilingus. He then pushed

her onto the floor and raped her. Next, he committed an act of anal sodomy. Then he raped her again.

The man ordered the victim to get off the floor. He led her blindfolded to the bathroom, placed her hands on the cold water shower faucet, and ordered her to adjust the water temperature, and to wash herself with soap. He instructed her to remain in the shower for ten minutes. He took $27 from her purse while she was in the shower. The victim stayed in the shower until she had determined her attacker had left her home. Then, she called the police.

When the police arrived, they discovered that the rapist entered the victim's home by tearing a screen and climbing through a closed but unlocked ground floor window. He departed by opening a door which the victim had previously locked.

Approximately 11:05 p.m., a police tracking dog found a track which began outside the victim's home near the ground floor window which was the point of entry and extended along a chain link fence to a business parking lot owned by Clayton Boutchyard. The tracking dog found a second track which extended from the rear of the victim's home into a wooded area behind her home. The second track also led to Boutchyard's parking lot.

Virginia Brown was sitting on the back porch of her home on the evening of June 1, 1988. Her home is adjacent to Boutchyard's parking lot and is located approximately 325 feet from the victim's home.

Approximately 9:40 p.m., Brown saw a small car enter the parking lot. She saw a man get out of the car and walk along a chain link fence which separated Brown's yard from the parking lot. The fence extends from the rear of the parking lot to the side of the victim's home. The man walked in the direction of the victim's home and disappeared from Brown's sight as he approached a wooded area between Brown's home and the victim's home.

Mr. Boutchyard arrived at his business approximately 10:20 p.m. that night. He drove to the rear of his parking lot where he saw an unoccupied car, parked in a manner hiding it from view. Boutchyard identified the car as a Datsun.

Fearing that the operator of the car was burglarizing his building, Boutchyard memorized the car's license plate number. Finding that the car's doors were unlocked, he opened a door, went into the glove compartment and removed some papers, including the automobile registration. Norman Derr's name appeared on the

registration. Boutchyard called the police about 10:50 p.m. and reported the presence of the car on his property and the car's license number.

The police dispatcher learned from the Division of Motor Vehicles that the car was registered to Norman B. Derr, a 33-year-old white male, six feet tall, weighing 173 pounds, with blond hair and blue eyes, and whose registered address was 1511 Perryville Drive, in the Mechanicsville area of Hanover County.

Charles Derr, Norman Derr's father, testified at trial that he and his wife returned to their home at 1511 Perryville Drive in the evening on June 1, 1988. Neither Norman Derr, who customarily drove the Datsun, nor the Datsun, was there when they returned. Norman Derr arrived home after 11:00 p.m. that night and Charles Derr noticed the Datsun parked in the driveway about 12:15 a.m. when he opened a door to let his dog go outside.

The police obtained and executed search warrants on June 2, 1988 to search Norman Derr's person, his home in Hanover County, and his Datsun. When the police arrived at Derr's residence to conduct their search, Charles Derr identified the bedroom that Norman Derr occupied. During the search, the police seized numerous items, including brown leather work boots located on the floor near Norman Derr's bed.

It was later determined by a forensic fibers expert that carpet fibers which were attached to the sole of Derr's left work boot matched, in physical, chemical, and optical properties, carpet fiber samples taken from two different locations in the victim's home. The carpet fibers on the left work boot matched fibers taken from a faded blue carpet in excess of 30 years old, which was on the floor in the room where the rapist entered the victim's home. Another fiber on the work boot matched fibers taken from a small "goldish brown" industrial carpet which was located on the floor near the back door where the rapist left the victim's home.

In August 1988, the police executed a second search warrant of Derr's home to secure carpet fibers for comparison. The police also collected carpet fibers from all known sites where Derr had worked. None of these fibers matched, in physical, chemical, or optical properties, the carpet fibers found on Derr's left work boot.

## II.

Derr filed a motion to suppress certain evidence and a memorandum in support of his motion in the trial court. The motion

was granted. The Commonwealth appealed that order pursuant to Code § 19.2-398 and the Court of Appeals reversed, holding, in an unpublished opinion, that there was probable cause to support the warrants and alternatively, that the evidence was admissible because of the "good faith" exception to the warrant requirement.

On the evening of June 2, 1988, Detective Musselman of the Fredericksburg Police Department, who was assigned to investigate these crimes, prepared three search warrant affidavits and presented them contemporaneously to a magistrate in Hanover County. The affidavits were filed to procure search warrants for Derr, the residence of Beverly and Charles Derr, and Derr's car. The following facts are contained in all three warrant affidavits:

> On 6-1-88 at approximately 10:30 p.m. a rape was occurring at 403 Confederate Blvd., Fredericksburg, Va. Just prior to this time Mr. Clayton Boutchyard arrived at his place of employment located at 2300 Jeff Davis Hwy, Fredericksburg, Va. The two addresses are adjacent to each other. Upon arrival Mr. Boutchyard noticed a vehicle parked behind his business and made a note of the license number of SHC-824. After going into the business to get a flashlight the vehicle was gone upon his return. At 9:35 a.m. on 6-2-88, an anonymous crime solver call was received in which the caller stated that they observed a vehicle park (in the same location as stated by Mr. Boutchyard), a tall white male exit the vehicle, and walk along the fence line behind the lot toward the victim's house. The registered owner of the car, Norman B. Derr, has been charged several times since 1976 with like offenses in which the method of operation was very similar.

The affidavit for the search warrant of the Perryville Drive residence states in part:

> The place, person, or thing to be searched is described as follows: The residence of Beverly and Charles Derr located at 1511 Perryville Dr., Mechanicsville, Va. The house is further described as being located approximately one mile north of Rt. 360 at the intersection of Perryville Dr. and Perryville Terrace. The house is a modern design home, cedarwood appearing siding, beige colored garage door, sky lights on front and back, and deck on rear of house.

The affidavit for the search of Derr's person states in part:

The place, person, or thing to be searched was described as follows: A white male named Norman B. Derr whose last known address is 1511 Perryville Dr., Mechanicsville, Va. Derr is further described as 6'0" tall, 173 pounds, blond hair, blue eyes, and 33 years of age having been born on 12-6-54.

The affidavits for the searches of Derr's person, car, and home state in part:

A search is requested in relation to an offense substantially described as follows: The breaking and entering of the residence located at 403 Confederate Blvd., Fredericksburg, Va. on 6-1-88 and the rape that occurred within that residence of . . . [the victim], a white female, 56 years of age.

The affidavits for the search warrants identified as the items to be searched for: a "[p]air of women's pantyhose, a curved blade knife, and trace evidence consistent with the offense of rape such as hair, fibers, and body fluid."

Derr argues that the affidavit in support of the search warrant for the house does not comply with Code § 19.2-54.[1] Derr asserts that the affidavit fails to state any connection between the house in Hanover County and the crimes which occurred in Fredericksburg and that the magistrate should not have considered facts contained in the affidavits for the searches of Derr's person and

---

[1] Code § 19.2-54 states in part:
No search warrant shall be issued until there is filed with the officer authorized to issue the same an affidavit of some person reasonably describing the place, thing, or person to be searched, the things or persons to be searched for thereunder, alleging briefly material facts, constituting the probable cause for the issuance of such warrant and alleging substantially the offense in relation to which such search is to be made and that the object, thing, or person searched for constitutes evidence of the commission of such offense . . . . No such warrant shall be issued on an affidavit omitting such essentials, and no general warrant for the search of a house, place, compartment, vehicle or baggage shall be issued. The term "affidavit" as used in this section, means statements made under oath or affirmation and preserved verbatim.

car when making her probable cause determinations relevant to the search of the house.[2] We disagree.

We discussed the affidavit requirement contained in Code § 19.2-54 in *McCary* v. *Commonwealth*, 228 Va. 219, 321 S.E.2d 637 (1984). In *McCary*, the defendant contended that an affidavit was invalid because the police officer inaccurately stated in the affidavit that he had personal knowledge of facts contained in the affidavit. We observed that the Fourth Amendment does not require that the sworn statement upon which the magistrate relies in determining probable cause, be reduced to writing. *Id*. at 231, 321 S.E.2d at 643. We held that under a Fourth Amendment analysis, "an insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant." *Id*. Further, we held that Code § 19.2-54 permitted the magistrate to consider both the affidavit and the police officer's verbal explanation that he did not have personal knowledge of the facts contained in the affidavit but had received that information from other officers. *Id*. at 230-31, 321 S.E.2d at 643-44. In *McCary*, however, we did not consider whether Code § 19.2-54 permits a magistrate to consider facts contained in different affidavits presented to her by the same officer at the same time which involved multiple searches related to the same offenses.

Applying the *McCary* rationale, we now hold that an "affidavit may be supplemented or rehabilitated" with additional affidavits which contain collective facts relevant to the same offenses when those affidavits are presented, simultaneously, to the issuing magistrate by the same officer. *See Tucker* v. *State*, 403 So.2d 1274, 1278 (Miss. 1981); *State* v. *White*, 275 S.C. 500, 502, 272 S.E.2d 800, 801 (1980). Accordingly, the magistrate did not violate Code § 19.2-54 when she considered the collective facts contained in the several affidavits in determining probable cause to search.

Next, Derr argues that there was not probable cause to support the issuance of a search warrant for the house on June 2, 1988. We disagree.

We have defined probable cause as follows:

---

[2] Derr argues that the affidavit for the search warrant of his person was not signed and, therefore, he argues "the affidavit is effectively unsworn; not an affidavit at all." We do not consider this issue because Derr did not raise it in the trial court. Rule 5:25.

Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed.

*Saunders* v. *Commonwealth*, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977). In determining whether the affidavits are sufficient to support the search warrant, we must look to the totality of the circumstances. *Illinois* v. *Gates*, 462 U.S. 213, 230-31 (1983). The Supreme Court, rejecting a hypertechnical, rigid, and legalistic analysis of probable cause determinations, approved a common sense approach:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

462 U.S. at 238-39, (quoting *Jones* v. *United States*, 362 U.S. 257, 271 (1960)) (ellipses in original).

■ Additionally, the Supreme Court cautioned that an after-the-fact review of a magistrate's decision should not be made *de novo* and that great deference should be given to the magistrate's finding of probable cause. *Gates*, 462 U.S. at 236. The Supreme Court observed, " '[a] grudging or negative attitude by reviewing courts toward warrants,' . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " *Id*. at 236, (quoting *United States* v. *Ventresca*, 380 U.S. 102, 108-09 (1965)).

■ Applying the principles that the Supreme Court discussed in *Gates*, we hold that the affidavits in this case, when viewed collectively, demonstrate that the magistrate had a substantial basis for concluding that the searches would uncover evidence of criminal offenses.

The affidavits informed the magistrate that on June 1, 1988, at approximately 10:30 p.m., a rape occurred at the victim's home on 403 Confederate Boulevard, Fredericksburg. Just before the rape occurred, a car registered to Norman B. Derr was seen parked in close proximity to the victim's home.[3] The owner of the car, Norman Derr, had been charged with several offenses since 1976 including abduction, rape, and burglary. The method of operation in those offenses was similar to that employed in these offenses. The residence in Hanover County was Derr's primary residence. Derr is described, in one of the affidavits, as a white male who is six feet tall and weighs 173 pounds. An anonymous "crime solver" called the police the morning after the crimes were committed and informed the police that the "crime solver" had observed a car parked in Mr. Boutchyard's parking lot, and that a tall white male alighted from the car and walked along a fence toward the victim's home. We hold that these facts establish a substantial basis for concluding that the searches would uncover evidence of criminal conduct.

We also hold that the searches were valid for another reason. In *McCary*, we applied the good faith exception to the exclusionary rule. *See United States* v. *Leon*, 468 U.S. 897 (1984); *Massachusetts* v. *Sheppard*, 468 U.S. 981 (1984); *McCary*, 228 Va. at 232, 321 S.E.2d at 644.

■ In *Leon*, the Supreme Court held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918. The purpose of the exclusionary rule historically was to deter police misconduct rather than to punish the errors of magistrates. *Id.* at 916. This deterrent is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant. The Supreme

---

[3] The search warrant affidavits incorrectly state that Mr. Boutchyard's business and the victim's home are adjacent to each other. The trial court, after hearing the evidence during the suppression hearing, held that this was a harmless mistake.

Court stated the appropriate test which would permit exclusion of the evidence:

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . [I]n such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' . . . . Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (citations omitted).

■ When the officers conducted the searches, they acted in good faith, reasonably, and under the authority of an apparently valid warrant. None of the evils identified in the *Leon* test are present here. Accordingly, we hold the fruits of the search are admissible in evidence.[4]

■ Finally, Derr argues that the items seized during the first search of the house on Perryville Drive exceeded the scope of the description of the items to be seized contained in the warrant. We disagree.

That search warrant authorized a search for a "[p]air of women's pantyhose, a curved blade knife, and trace evidence consistent with the offense of rape such as hair, fibers, and body fluid." The boots, socks, sheets, shirt, and one knee-high stocking hose which were taken from the home were properly seized because, as Detective Musselman testified during the suppression hearing, these items could contain evidence such as semen, stains,

---

[4] Derr also argues that the evidence seized during a second search warrant of the house on August 23, 1988, should have been suppressed because the evidence seized constituted "fruit of the poisonous tree." We reject this argument, however, because of our holding that the June 2, 1988, searches were valid.

hairs, or fibers linking Derr to the crimes. The lint from a dryer vent was seized from the utility room because clothing had been recently laundered and the lint could have contained trace evidence.

## III.

Derr argues that the evidence was not sufficient to support convictions of burglary of a dwelling house while armed with a deadly weapon, rape, forcible sodomy, and abduction because the Commonwealth did not prove that he was the perpetrator of the crimes.[5] We disagree.

Applying well-established principles of appellate review, we must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. *Higginbotham* v. *Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The burden is upon the Commonwealth, however, to prove beyond a reasonable doubt that Derr was the perpetrator of the crimes. *Id.* at 353, 218 S.E.2d at 537. Additionally, circumstantial evidence is as competent, and entitled to the same weight, as direct testimony if such evidence is sufficiently convincing. *Epperly* v. *Commonwealth*, 224 Va. 214, 228, 294 S.E.2d 882, 890 (1982); *Stamper* v. *Commonwealth*, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979).

There was more than sufficient evidence from which the jury could infer that Norman Derr was the perpetrator of these criminal acts. Derr's car was parked near the victim's home during the time these crimes were committed. The car was parked behind a building so that the car's presence would not be easily detected. On the night the crimes occurred, Derr was away from home in his car. When Derr returned home after the crimes had been committed, he returned in his car. The time that the car was parked in Mr. Boutchyard's parking lot coincides, almost exactly, with the time period in which the crimes occurred. Additionally, a trained dog found tracks which extended from the victim's home to the parking lot where Derr had parked his car.

Carpet fibers found on Derr's work boot had the same optical, chemical, and physical properties as fibers taken from two carpets

---

[5] Derr also argues that the evidence was not sufficient to support the abduction conviction. Derr did not make this argument in the trial court and, thus, we do not consider it here.

in the victim's home, including a faded blue carpet which was over 30 years old. The carpet fibers found on Norman Derr's boot did not match any of the carpet samples taken from his home, his car, or any known locations where he worked.

The jury was entitled to infer that the man Mrs. Brown saw leave the parked car and walk into the woods in the direction of the victim's home was Norman Derr. The jury was further entitled to infer that Derr waited until the victim turned the lights off in her house and went upstairs before he broke the screen on her window, raised the window, and entered her house.

The victim described her assailant as a tall white man who was similar in stature and build to Derr. A knife, similar in appearance to the knife that the assailant had in his hand when he entered the victim's bedroom, was found in Derr's home. A stocking, similar to the stocking that the perpetrator wore over his face to conceal his features and hair, was also found in Derr's home. The victim testified that her assailant had no substantial facial hair. Derr, at the time of his arrest, had no substantial facial hair.

We hold that the evidence considered as a whole is sufficient to support the jury's findings that Derr perpetrated the criminal acts. "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Stamper*, 220 Va. at 273, 257 S.E.2d at 818, (quoting *Karnes* v. *Commonwealth*, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

## IV.

Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*