COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Bumgardner


DAVID LEWIS GIBBS
                                MEMORANDUM OPINION[*] BY
v.      Record No. 1117-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        APRIL 6, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

(Lee Hendricks Turpin, on brief), for
appellant.  Appellant submitting on brief.

(Mark L. Earley, Attorney General;
Richard B. Campbell, Assistant Attorney
General, on brief), for appellee.  Appellee
submitting on brief.


David Gibbs (appellant) was convicted in a bench trial of

perjury, in violation of Code § 18.2-434.[1]  On appeal, he

contends that the evidence was insufficient to prove his guilt.

We disagree and affirm his conviction.

I.

Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

_____

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

[1]The trial court convicted appellant of two counts of
perjury.  We granted appellant's petition for appeal on only one
count, concerning appellant's statements about his operation of
a motor vehicle.

therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence established that on June 11, 1997, Detective Mark Hendrix observed appellant driving a brown Chrysler Lebaron near Hughes Street and Chatelaine Avenue in the City of Danville.[2] Appellant was exceeding the speed limit, and his rear license plate was improperly displayed on his vehicle. The officer saw only one occupant in the vehicle, whom he later identified as appellant.

Hendrix activated his lights and followed appellant's car through College Park and onto Highway 86. As appellant crossed the state line into North Carolina, Hendrix turned off his lights and returned to Danville. The officer later determined that the owner of the vehicle was an individual named "David Lewis Gibbs," who resided at 148 South Hunter Street. Hendrix drove to that address and "[w]hen [he] first pulled up, the Lebaron was setting [sic] there in the driveway . . . ."

Hendrix arrested appellant for driving on a suspended license, eluding the police and possession of cocaine. Appellant made the following statement to the police:

> [Hendrix]: Okay. Ah, now I think this was about a few minutes after twelve, . . . [and] you were over at Chatelaine and Edmonds Street. Is that right?
>
> [Appellant]: Yes sir.

---

[2]Hughes Street and Chatelaine Avenue run parallel to each other and are both intersected by Edmonds Street.

Appellant also admitted that he was driving a brown Chrysler Lebaron that afternoon.

At his September 26, 1997 suppression hearing and trial for the driving offense and possession of cocaine, appellant testified under oath that he was not telling the truth when he made the confession to Detective Hendrix on June 11, 1997. Specifically, appellant testified as follows:

> Q.  Well, . . . how did the story work itself out?
>
> A.  . . . I can still remember . . . how it actually wound up happening was [Hendrix] said, he asked me if I was over on Hughes, or something like Chatelaine.  I said, no sir, no I wasn't.  I didn't know what he was talking about.  Basically he said well here's how it, [sic] he said you was over on Hughes and Chatelaine, he says, and you know you was making a buy, you know you was doing this.  I'm like sir, I don't know what you're talking about.  He kept on saying, yeah you were.  I said, yeah, sure, whatever.  So finally he said if I would say a few things like I was over on Hughes and Chatelaine making a buy . . . and I was indeed driving. . . .
>
> Q.  So you're saying you weren't driving either?
>
> A.  Yes sir, I am saying that.  At that time I was not driving.
>
> Q.  Your own wife said you arrived after her in the brown Chrysler?
>
> A.  She said I arrived.  She didn't say I was driving now, did she?

Q.   Well, who was driving?

A.   Sir, I said I wasn't driving at that time.

Q.   Who was driving the brown Chrysler when you arrived over on South Hunter Street?

A.   Well, at that time I think that's a little irrelevant but, to the whole point of . . . [.]

Q.   It's perfectly relevant, Mr. Gibbs.  Who was driving?

A.   I would have to say, when I got in the yard, I was driving in the yard.

Q.   Well, who was driving before you got to the yard, Mr. Gibbs?

A.   Sir, while I was being accused of being over on Hughes and Chatelaine, I was nowhere over there.

Q.   Who was driving before you got to the yard on Hunter Street, Mr. Gibbs?

A.   Sir, I drove down Hunter Street.

Q.   Alright.  Where did you come from to get to Hunter Street?

A.   Sir, we was coming from Piney Forest, basically.  It was 29, I guess it's considered as Piney, I call it . . .[.]

Q.   So you never . . . ?

A.   . . . Piney Forest.

Q.   You never drove over on Edmonds Street?

A.   I ain't gonna say I've never drove over in my life, but I wasn't that day.

Q.   That day?  That day you didn't?

- 4 -

A. That day I did not.

(Emphasis added).

At the trial for the perjury charge, Deputy Clerk Brenda Burnett testified that she administered the oath to appellant on September 26, 1997 for his suppression hearing. Additionally, Detective Hendrix testified that on June 11, 1997, he observed and followed a brown Chrysler Lebaron on Hughes Street and Chatelaine Avenue. Hendrix also confirmed that the only occupant in the vehicle was the driver, who was later identified as appellant. Jody Adam Vaden, appellant's brother-in-law, testified on appellant's behalf. According to Vaden, appellant picked him up from the mall on June 11, 1997, and drove directly to the residence on Hunter Street. Vaden stated that they were driving in a "gray car" and that they did not drive on Chatelaine Avenue or Edmonds Street. Following closing arguments, the trial court convicted appellant of perjury.

## II.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991).

- 5 -

"In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The perjury statute under which appellant was convicted provides as follows:

> If any person to whom an oath is lawfully administered on any occasion willfully swear falsely on such occasion touching any material matter or thing, . . . he shall be guilty of perjury, punishable as a Class 5 felony.

Code § 18.2-434.  "In order to sustain a perjury conviction under this statute, the Commonwealth ha[s] the burden of proving:  (1) that an oath was lawfully administered; (2) that the defendant wilfully [sic] swore falsely; and (3) that the facts to which he falsely swore were material to a proper matter of inquiry."  Mendez v. Commonwealth, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979).  The Commonwealth bears the burden of proving each of these elements of the offense beyond a reasonable doubt.  See Holz v. Commonwealth, 220 Va. 876, 880, 263 S.E.2d 426, 428 (1980).

In the instant case, appellant concedes that his statements concerning the operation of the motor vehicle were made willingly, under oath and related to a material fact in issue. However, appellant argues that the Commonwealth failed to establish that he knew the statements were false. We disagree.

"'[A] perjury conviction under Code § 18.2-434 requires proof of falsity from the testimony of at least two witnesses or other corroborating evidence of falsity in the event the case is supported by the testimony of only one witness.'" Stewart v. Commonwealth, 22 Va. App. 117, 120, 468 S.E.2d 126, 127 (1996) (quoting Keffer v. Commonwealth, 12 Va. App. 545, 549, 404 S.E.2d 745, 747 (1991)). "[A]lthough the corroborating evidence 'must be of a strong character, and not merely corroborative in slight particulars,' it need not be equal in weight to the testimony of a second witness. Rather, the corroborating evidence must confirm the single witness' testimony in a manner strong enough 'to turn the scale and overcome the oath of the [defendant] and the legal presumption of his innocence.'" Id. (citations omitted) (alteration in original).

In the instant case, Detective Hendrix was the only witness who testified that appellant was driving a brown Chrysler Lebaron on June 11, 1997, on Hughes Street and Chatelaine Avenue. Therefore, unless other evidence corroborates Hendrix's

testimony that appellant testified falsely about not driving on those two streets, appellant's perjury conviction cannot stand.

Sufficient evidence in the record corroborates Detective Hendrix's testimony that appellant was driving on Hughes and Chatelaine. First, appellant's confession to the police was an admission that he was driving on that particular day in that particular area of Danville. Appellant made the following statement:

> [Hendrix]: Okay. Ah, now I think this was about a few minutes after twelve, . . . [and] you were over at Chatelaine and Edmonds Street. Is that right?
>
> [Appellant]: Yes sir.

Although appellant later denied driving his vehicle on Hughes and Chatelaine on the afternoon of his arrest and testified that his confession was false, the fact finder was not required to believe him nor give any weight to his testimony. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."). Thus, the trier of fact could conclude that appellant's confession was, in fact, the truth.

Additionally, the "material and transparent deficiencies" in appellant's testimony at the suppression hearing corroborates

the officer's account of the events on June 11, 1997. Stewart, 22 Va. App. at 121, 468 S.E.2d at 128 (noting that the "material and transparent deficiencies" in the defendant's testimony "turn the scale" in favor of guilt). During cross-examination by the Commonwealth's Attorney, appellant wove an inherently incredible tale in his testimony about who was driving the Chrysler Lebaron on Hughes and Chatelaine.[3] Appellant gave no plausible explanation about who was driving the vehicle and the trier of fact could conclude from appellant's responses that he was lying to conceal his guilt. Cf. Stewart, 22 Va. App. at 121-22, 468 S.E.2d at 128 ("[Defendant's] lack of knowledge about the basic details of the accident and ownership of the automobile he claimed to have been driving, facts that he necessarily would know or be able to explain, corroborate [the witness'] testimony that [defendant] perjured himself.").

We recognize that "in a perjury prosecution, the Commonwealth has the burden of proving beyond a reasonable doubt not only that the statements made under oath by the accused were false, but also that he knew they were false when made."

---

[3]The Commonwealth's Attorney questioned appellant six times about "who was driving" the vehicle on that particular day. Appellant gave the following responses: "I said I wasn't driving at that time."; "I think that's a little irrelevant . . . ."; "[W]hen I got to the yard, I was driving in the yard."; "I was nowhere over there."; "I ain't gonna say I've never drove over [there] in my life, but I wasn't that day." Nevertheless, appellant failed to answer the question by the Commonwealth's Attorney.

<u>Waldrop v. Commonwealth</u>, 255 Va. 210, 215, 495 S.E.2d 822, 825 (1998). In the instant case, the trial court obviously accepted the Commonwealth's evidence that appellant was, in fact, driving his vehicle on Hughes and Chatelaine on the afternoon of his arrest and later lied under oath when he disavowed his earlier admissions. Consequently, the trial court concluded that appellant, with knowledge of his whereabouts on June 11, 1997, willfully swore falsely when he stated under oath that he was not driving that day. The Commonwealth's evidence, including the officer's eyewitness identification of appellant, appellant's own earlier confession, and his evasive answers, was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that appellant was guilty of perjury. Accordingly, appellant's conviction is affirmed.

<u>Affirmed.</u>