COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


MONTUSA KARUNDO T. PACE

MEMORANDUM OPINION[*] BY
v.   Record No. 1984-99-1     JUDGE RUDOLPH BUMGARDNER, III
MAY 9, 2000
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

James S. Ellenson for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


A jury convicted Montusa Karundo T. Pace of first-degree murder, burglary, three counts of robbery, and five counts of use of a firearm in the commission of a felony.  He argues the trial court erred in admitting the statement of Adam Davis, a codefendant.  The Commonwealth concedes the admission was error, but we conclude the error was harmless beyond a reasonable doubt.

On appeal, we consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.  See Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991).  Viewed in that

_____
     * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

manner, the evidence established that Adam Davis and Chris Moltz asked Frankie Davis if he knew anyone who might be interested in robbing a house for them. They believed drugs, weapons, and money were in the house. Frankie Davis contacted the defendant because the defendant had told him earlier that day that he wanted to commit a robbery.

The defendant went to Frankie Davis's house with two other men. All three were dressed in black, wore hoods over their heads, and covered their faces with masks. Frankie Davis and the defendant talked about the impending robbery. Adam Davis gave the defendant a floor plan of the house to be robbed, but when Adam Davis indicated that he wanted to go with the defendant, the defendant said, "all he had to do was point the house out and [the defendant and his friends] would take it from there." The three masked men got into their car and followed Adam Davis and Moltz.

A masked gunman forced his way inside James Kahley's house, pointed a gun to Kahley's head, and told him it was a robbery. Two more masked gunmen entered the house. As the defendant entered, he shot Kahley's dog, and ordered Kahley and two friends to lie on the floor. When a gunshot rang out upstairs, the defendant told Kahley "not to fucking look up again or he'll start killing people." The defendant had a chrome gun with a laser sight.

-

Another masked gunman, later identified as Otis Thomas or "O," went to the second floor. There he shot Michael Jackson and got into a scuffle with Aaron Melton. The fight broke up when the third masked gunman came to help Thomas. The two gunmen hurried downstairs, and thirty seconds later, all three gunmen left the house.

The defendant went to Frankie Davis's house the next morning. He told Frankie Davis that the house was not like Adam Davis and Moltz had described it. He also told Frankie Davis that he forced some guy inside and shot a Rottweiler when it came at him. The defendant stated, "O [Otis Thomas] had to wet somebody." Frankie Davis understood that to mean that Thomas had shot somebody. The defendant gave Frankie Davis a plastic bag to keep because "he didn't want it to be in his house." The bag contained a box of laser beams, a mechanism that fits around the trigger of a gun, and a box for a laser sight. Frankie Davis buried the items in his mother's backyard.

During the trial, the Commonwealth presented the statement that Adam Davis gave the police as a declaration against penal interest. In the statement Adam Davis described the planning of the robbery. He denied knowing the robbers and did not identify any of them. He gave no information about the events at the Kahley house. The statement minimized Adam Davis's role in planning the robbery, and it paralleled much of the testimony of Frankie Davis about that stage of the robbery.

-

The Commonwealth conceded the trial court erred in admitting Adam Davis's statement.  Lilly v. Virginia, 527 U.S. 116, 134, 119 S. Ct. 1887, 1899 (1999), which was decided after the trial of this case, held that the admission of an accomplice's confession is a violation of a defendant's right to confrontation.  However, "'an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'"  Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 125 (2000) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986)).

In order to determine if the error is harmless, this "court must be able to declare a belief that it was harmless beyond a reasonable doubt."  Chapman v. California, 386 U.S. 18, 24 (1967).

> This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citations omitted).

-

Applying these principles, we conclude that the error was harmless beyond a reasonable doubt. Frankie Davis testified that the defendant had said he wanted to rob someone and that Frankie Davis contacted the defendant when a robbery opportunity presented itself. The defendant and two other men went to Frankie Davis's house dressed in black with ski masks and hoods to conceal their identity. The defendant spoke to Adam Davis and was given a floor plan of the house to be robbed. The defendant told Adam Davis to point out the house and he and his boys would do the rest. Frankie Davis also testified that the defendant came to his house early the next morning and told him the house they robbed was different than described. The defendant told Frankie Davis that he forced a guy into the house and shot a dog. The defendant said that Thomas shot someone. The defendant gave Frankie Davis a bag that contained a laser switch because he did not want it to be found in his house.

Kahley testified that he was forced back in his house at gunpoint and that a masked man with a laser beam on his gun shot the dog. That man guarded him and his friends as the other two went upstairs. When he heard a shot upstairs, the defendant told him "not to fucking look up again or he'll start killing people." One of the witnesses, Charles Oakman, testified that he and Jackson were robbed before Jackson was killed. A second witness, Aaron Melton, testified that he also was robbed.

-

The statement made by Adam Davis never mentioned the defendant or his role in the robbery.  It only described the planning of the robbery and added no information to that presented by Frankie Davis.  The statement was primarily an attempt by Adam Davis to minimize his role in planning the robbery.  The statement did not implicate the defendant in any way, but the other evidence of the Commonwealth was credible and overwhelmingly implicated the defendant in the crimes for which he was convicted.  The admission of Adam Davis's statement was harmless beyond a reasonable doubt.  Accordingly, we affirm the judgment of the trial court.

Affirmed.

-