COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


RICHARD MATTHEW JOHNSON

MEMORANDUM OPINION* BY
v.        Record No. 3026-02-2            JUDGE LARRY G. ELDER
                                          DECEMBER 30, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AMELIA COUNTY
Thomas V. Warren, Judge

Christopher J. Collins for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Richard Matthew Johnson (appellant) appeals from his bench trial convictions for

breaking and entering, grand larceny, and driving after having been declared a habitual offender.

On appeal, he contends the evidence was insufficient to prove he was the person seen driving

from the scene of the theft.  We hold the circumstantial evidence linking appellant to the crime

was sufficient to exclude all reasonable hypotheses of innocence, and we affirm.

On appeal, we view the evidence in the light most favorable to the Commonwealth and

accord the evidence all reasonable inferences fairly deducible therefrom.  Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The credibility of a witness, the

weight accorded the testimony, and the inferences to be drawn from proven facts are matters

solely for the fact finder's determination.  Long v. Commonwealth, 8 Va. App. 194, 199, 379

S.E.2d 473, 476 (1989).  The fact finder is not required to believe all aspects of a witness'

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

statements or testimony; it may accept some parts as believable and reject other parts as implausible. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Any element of a crime, including the identity of the perpetrator, may be proved by circumstantial evidence. Lovitt v. Commonwealth, 260 Va. 497, 513-14, 537 S.E.2d 866, 877 (2000) (upholding capital murder conviction based on circumstantial evidence where eyewitness "was unable to identify [the defendant] at the preliminary hearing as [the victim's] assailant and, at trial, was only '80% certain' that [the defendant] was the assailant"). Such evidence "is as competent and is entitled to as much weight as direct evidence, provided [the evidence as a whole] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence . . . ." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993); see Commonwealth v. Hudson, 265 Va. 505, 512-17, 578 S.E.2d 781, 785-88 (2003).

Finally, "[c]ircumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Hudson, 265 Va. at 514, 578 S.E.2d at 786 (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (citations omitted)).

Here, the only reasonable hypothesis flowing from the evidence in the record, viewed in the light most favorable to the Commonwealth, was that appellant was the person who burglarized Samuel Watkins' Amelia County residence, took the firearms and camera, and drove away from the scene as John Watkins watched. The license plate number on the small, gray four-door car John Watkins observed being driven from the scene of the break-in at about 3:30 p.m. on July 9, 2000, matched the license plate number on the gray Toyota Tercel registered

to appellant's live-in girlfriend, Collette Mayton. Appellant testified that Mayton had gotten a new car at least "[a] couple of weeks" earlier and admitted to Officer Whitaker that, excepting his claim that he had loaned the car to a man named Lorenzo, he, appellant, was the only person who ever drove the gray Tercel.

When Officer Whitaker first asked appellant where he was on July 9, 2000, appellant said he left the Richmond home of his "other girlfriend," Claudette Crawley, at about 10:00 or 11:00 a.m., went to the Prince Edward County cookout with Edward Anderson, and was at the cookout at the time of the Watkins break-in. At trial, however, he testified he was at Crawley's house in Richmond until 3:30 or 4:00 p.m. that day and arrived at the cookout at about 6:00 or 7:00 p.m. The only evidence corroborating appellant's testimony was the testimony of Crawley, appellant's girlfriend of five years.

The trial court was free to reject Crawley's testimony and portions of appellant's testimony to conclude that appellant left Crawley's home before noon on Sunday, as he originally told Officer Whitaker, and did not arrive at the cookout until at least 6:00 p.m., as he testified to at trial, leaving him ample opportunity to burglarize Samuel Watkins' Amelia County home between 3:00 and 3:30 p.m. that afternoon. The trial court concluded appellant's trip to the cookout would have caused him to pass through the area where the burglary occurred, and eyewitness John Watkins testified he was 90% sure appellant was, in fact, the person he saw leaving his uncle's residence in the gray car.

Officer Whitaker went to the Chesterfield residence appellant shared with Collette Mayton two days after the burglary and told Mayton "[he] was looking for guns." Appellant later admitted to Officer Whitaker that he surreptitiously drove the car away "to see if there were any guns in [the car]." Whitaker testified appellant said that before driving the car away, he knew police believed the car had been involved in a robbery and that stolen guns might still be in

the car. That same day, Richmond police received a tip about a gun found in a bathroom at Forest Hill Park, and the officer who responded to the scene found two firearms and a camera that had been taken in the burglary of Samuel Watkins' residence. Also that same day, police found in Mayton's car shotgun shells that matched some in the burglarized residence. Officer Whitaker testified the shells were "old" and "unusual" in that they were of a type no longer made. Although Officer Whitaker obtained no usable prints from the shells, appellant admitted he had handled the shells and that his fingerprints might be on them.

The trial court also was entitled, as it did, to reject appellant's claim that he loaned the car to a friend of his brother's named Lorenzo and to conclude that appellant was lying. See, e.g., Pugliese, 16 Va. App. at 92, 428 S.E.2d at 24. Appellant, a habitual offender who had eight prior felony convictions, gave numerous conflicting stories about whether, when and where he had driven Mayton's gray Tercel. Appellant's trial testimony conflicted with his pretrial statement and was corroborated only by Claudette Crawley, appellant's "other girlfriend" of five years with whom he said he had a daughter. Although the court's rejection of appellant's testimony did not constitute affirmative evidence of his guilt, the only reasonable hypothesis flowing from the remaining evidence, viewed in the light most favorable to the Commonwealth, was that appellant was seen departing the residence in Mayton's Tercel and his fingerprints were on unusual shotgun shells of the type taken from the residence.

For these reasons, we hold the evidence was sufficient to prove appellant was the person who burglarized the Watkins residence and, thus, was sufficient to support appellant's convictions. Accordingly, we affirm.

                                                                                    Affirmed.