COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Chafin and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

DAVID EDDIE LAMB

MEMORANDUM OPINION[*] BY
v.      Record No. 0688-12-3                        JUDGE TERESA M. CHAFIN
                                                    FEBRUARY 5, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Malfourd W. Trumbo, Judge

Wilson C. Pasley for appellant.

Michael T. Judge, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Aaron J. Campbell, Assistant
Attorney General, on brief), for appellee.


David Eddie Lamb ("Lamb") was convicted of fraudulently obtaining electric service in

violation of Code § 18.2-187.1(A).[1]  On appeal, Lamb argues that the evidence presented was

insufficient to prove that he obtained electric service by fraud, or that he had the specific intent to

defraud when he obtained electric service.  Finding the evidence sufficient to support Lamb's

conviction, we affirm the trial court's decision.[2]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Lamb's wife, Linda Russell Lamb, was tried and convicted with Lamb for the same
charge arising from the same conduct.  She appeals her conviction in Lamb v. Commonwealth,
Case No. 0710-12-3.

[2] Lamb also argues that the trial court erred by holding that Code § 18.2-187.1(A) does
not require proof of some affirmative attempt to fraudulently obtain utility services following a
notice of disconnection of the service from the service provider.  Assuming without deciding that
Code § 18.2-187.1(A) does require proof of an affirmative attempt to fraudulently obtain utility
services, we find that the evidence presented is sufficient to establish that Lamb fraudulently
obtained electric service through affirmative attempts in this case.  As the evidence presented is
sufficient to support Lamb's conviction under both the Commonwealth's and Lamb's
interpretation of the statute, we decline to address this argument at this time.

<u>Background</u>

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" <u>Archer v. Commonwealth</u>, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence establishes that in 2011, Lamb and his wife lived in a residence located in Eagle Rock, Virginia. They were the only individuals that lived at this residence. Craig-Botetourt Electric Cooperative ("Craig-Botetourt") provided the Lambs' electric service. Although Lamb's wife was the listed account holder of the Craig-Botetourt account, Craig-Botetourt also considered Lamb an account holder.

In early 2011, the Lambs owed a large balance on their electric bill. After the Lambs broke an agreement to pay their overdue bill, Craig-Botetourt began the process of disconnecting the service. Craig-Botetourt sent the Lambs four disconnect notices by regular mail addressed to Lamb's wife. The first and second disconnect notices contained disconnect dates of February 10, 2011 and March 10, 2011. The electric service, however, was not disconnected at those times due to the State Corporation Commission's policy of not permitting disconnection during the winter months. The third notice had a disconnect date of April 10, 2011. When the electric service was disconnected before that date, the State Corporation Commission ordered the service restored. Although Craig-Botetourt sent a final disconnect notice with a disconnect date of May 10, 2011, it had already disconnected the Lambs' electric service on April 13, 2011.

Craig-Botetourt disconnected the Lambs' electric service by placing "boots" over their meter's bottom terminals. The boots achieved the disconnection by interrupting the flow of electricity through the meter and into the residence. Once the boots were placed over the meter's bottom terminals, Craig-Botetourt placed the meter back onto its meter hub. Craig-Botetourt

then placed a locked clasp over the meter hub that prevented anyone from removing the meter without first removing the clasp.

Approximately six months later, Craig-Botetourt received an anonymous call about suspected power theft at the Lamb residence. Although Craig-Botetourt used a monitoring system that was capable of measuring electricity usage at a particular residence remotely from its main office, this system only received data from remote meters drawing electricity continuously for approximately seventy-two hours.[3] This system did not indicate that any electricity was being used at the Lamb residence.

On October 7, 2011, Craig-Botetourt sent a crew to the Lamb residence to investigate. Troy Duncan ("Duncan"), a supervising technician with Craig-Botetourt, examined the Lambs' electric meter. Upon arriving at the residence, Duncan observed the Lambs' meter disc turning. When he removed the meter from its hub, Duncan found that the boots had been removed and that the locked clasp had been cut. He also found a piece of scrap metal in the meter that he recognized could be used for bridging circuits together in order to steal electricity. Based on a meter reading taken by Duncan during this investigation, Craig-Botetourt determined that $796.35 of electricity had been used from April 13, 2011 to October 7, 2011.

On October 17, 2011, Investigator John Mandeville ("Mandeville") of the Botetourt County Sheriff's Department went to the Lamb residence and spoke to Lamb's wife about the power theft. Mandeville returned and interviewed Lamb on October 25, 2011. Both Lambs denied turning the power back on or having knowledge as to who had done so. Lamb claimed that one day he and his wife returned from the grocery store and the electricity was back on.

---

[3] This seventy-two-hour period is necessary for an information packet to develop and travel to the monitoring system. If the flow of electricity to a meter is disrupted during this time period, the meter will never report a packet of information.

Both Lambs told Mandeville that they thought that someone had paid their electric bill, but neither had knowledge of their benefactor's identity. Lamb told Mandeville that he had contacted the Botetourt County Department of Social Services seeking assistance paying his electric bill. Although the Department could not offer him assistance, Lamb said that they directed him to other organizations that could help him. Lamb, however, failed to contact any of those organizations or ask anyone else for help with the bill. Lamb never contacted Craig-Botetourt about the payment of his electric bill after the reestablishment of his electric service.

Analysis

The circumstantial evidence presented in this case is sufficient to support Lamb's conviction. Circumstantial evidence may be more compelling and persuasive than direct evidence, and it is entitled to as much weight as direct evidence when convincing. See Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008). "Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). "[D]irect proof of a fact is not essential if circumstantial evidence proves the same fact and at the same time excludes every reasonable hypothesis to the contrary." Veney v. Commonwealth, 212 Va. 805, 806, 188 S.E.2d 80, 81 (1972).

The circumstantial evidence in this case establishes that Lamb intentionally obtained electric service through an elaborate scheme to defraud Craig-Botetourt. Although no direct evidence was presented establishing that Lamb personally altered his meter or arranged for someone else to do so, this inference is implied by the evidence. In this case, Lamb's electric

- 4 -

meter was altered allowing him to obtain free electricity after Craig-Botetourt disconnected the service, and Duncan found a piece of scrap metal in Lamb's electric meter resembling those commonly used to bypass meters to obtain free electricity. Lamb directly benefited from receiving the free electricity obtained from Craig-Botetourt.

Further, the evidence in this case suggests that someone had to disrupt the flow of electricity into the Lamb residence every seventy-two hours to avoid detection of the electricity use by Craig-Botetourt's monitoring system.[4] Duncan testified that a packet of information develops during seventy-two hours of continuous electricity use that allows Craig-Botetourt to monitor electricity use remotely. Another individual employed by Craig-Botetourt testified that their monitoring system did not indicate that the Lamb residence was using any electricity during the time period in question. When Duncan went to the Lamb residence to investigate the alleged power theft, however, the Lambs' electric meter was running. If electricity had run through the meter for a continuous seventy-two-hour period at this time, Craig-Botetourt's monitoring system would have detected this electricity use.

The failure of Craig-Botetourt's monitoring system to indicate electricity use by the Lamb residence at a time period when the Lambs' meter was observed to be running and functioning properly implies that the meter had not been running continuously for seventy-two hours at the time of observation. Thus, the meter had been disconnected or reconnected within seventy-two hours of Duncan's inspection. As Lamb's electric service had been restored for an extended period at this time, this disconnection and reconnection process must have occurred at

_____

[4] "When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has a duty to examine *all* the evidence that tends to support the conviction. . . . [T]his examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008) (emphasis added) (citations omitted). As this evidence is included in the record and supports Lamb's conviction, this Court must consider this evidence despite the fact that it was not expressly argued at trial or mentioned by the circuit court.

least once during every seventy-two-hour period of electricity use. Otherwise, the electricity use would have been detected by Craig-Botetourt's monitoring system. These implied frequent disruptions in electric service suggest that Lamb actively participated in a calculated scheme to fraudulently obtain electricity from Craig-Botetourt.

Although Lamb claimed that he believed that his electric service was restored because an unknown benefactor paid his electric bill, the trial court was free to disbelieve this self-serving testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

In the present case, Lamb could not identify his benefactor, and admitted that the only agency that he had asked for help with this matter did not provide assistance. Lamb never contacted Craig-Botetourt about the resumption of electric service, even though he knew that the service had been disconnected for nonpayment. He made no efforts to verify that his delinquent bills had been paid, or that the bills he incurred after resumption of the service were being paid. These facts support the trial court's disbelief of Lamb's testimony in this case.

### Conclusion

The evidence presented is sufficient to prove that Lamb fraudulently obtained electricity from Craig-Botetourt. As the elaborate scheme utilized by Lamb to obtain this free electricity was designed to avoid detection, the evidence presented also establishes that Lamb obtained this electricity with fraudulent intent. For these reasons, the judgment of the circuit court is affirmed.

Affirmed.