COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Beales
Argued by videoconference

**UNPUBLISHED**

MAURICE ADDISON

MEMORANDUM OPINION[*] BY
v.        Record No. 0020-20-2        JUDGE WILLIAM G. PETTY
                                      MARCH 16, 2021

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
appellant.

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Maurice Addison argues on appeal that he was wrongly convicted after a bench trial because

the evidence was insufficient to prove beyond a reasonable doubt that Addison was the person who

shot and killed Antonio Chalkley.  For the following reasons, we affirm the conviction.

BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Holloway v. Commonwealth, 57 Va. App. 658, 663 (2011) (*en banc*).  "Viewing the record

through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Id. (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562 (2009)).

The body of Antonio Chalkley was discovered by a City of Richmond code inspector in an alley at 10:14 a.m. on December 20, 2018. Chalkley had been shot five times. The alley was behind the apartment that Maurice Addison had rented and in which he had recently allowed Chalkley to live. When a Richmond police detective arrived to investigate the death, he found money and other items of value on and around Chalkley's body, which the detective testified was inconsistent with a robbery. He also learned that a security camera on a nearby home had recorded video during that morning. The detective testified that the video showed a silver car pull into a parking area near the alley, where it remained for over an hour. At one point, a person dressed in black, who the detective identified as Chalkley, and a person with a white jacket, identified as Addison, talked near the silver car while it was parked near the residence.[1] At about 9:37 a.m., the driver pulled the silver car into the alley behind the residence, and Chalkley walked to the same location. At 9:40 a.m., the silver car pulled out of the alley and sped past a second video camera that recorded a close-up of distinctive stickers.[2] At 9:41 a.m., the police received a telephone call from a person in the area reporting five gunshots. At 9:43 a.m., phone records showed a call was made from Addison's cell phone, which was located near the scene of the murder, to Addison's

---

[1] Addison objected to the detective's identification of both Addison and Chalkley. The trial court ruled that it would allow the detective to refer to the individuals by name, but it would not accept the detective's identification of Addison or Chalkley as conclusive. However, as discussed below, other evidence supports the court's ultimate conclusion that the detective's identification was correct.

[2] The detective testified that the time stamp on the video was seven minutes fast. These two times are taken from the video time stamp minus seven minutes.

coworker. The coworker testified that Addison told her during the call that Chalkley had been killed. Chalkley's body was discovered in the alley from which the car was seen leaving.

Two days after the murder, the detective interviewed the owner of the restaurant where Chalkley and Addison worked. The owner told him that he had sold the silver Nissan Maxima to Addison.[3] On the same day, the detective interviewed Addison, who admitted that the silver Nissan Maxima belonged to him. Addison told the detective that he had not been to the apartment since December 18, two days before Chalkley's murder.

The following month, the detective found the silver Nissan Maxima parked in an alley behind the residence of Addison's stepfather. In a follow-up interview, Addison told the detective that he was the only person who drove the car. The detective seized Addison's phone from his stepfather's residence. A special agent testified that he determined through the use of T-Mobile records of cellular tower usages that Addison's phone was near Chalkley's residence, the murder scene, at the time the shots were heard. Moreover, those records showed no outgoing calls or messages were made with Addison's cell phone after the day of the murder.

Addison was charged with voluntary manslaughter. He waived extradition from Delaware; he told the officer who transported him to Virginia that he wanted to get this over with and "you reach out your hand and you get in other people's stuff, in other people's bullshit, and this is what happens." During Addison's bench trial, he made a motion to strike the evidence on the basis that the evidence was insufficient to prove Addison was the person who killed Chalkley. The trial court denied the motion, and Addison now appeals that decision.

---

[3] The Nissan had several distinctive decals and markings that were consistent with the car shown in the video leaving the alley.

ANALYSIS

When a defendant is tried by bench trial, "a trial judge's 'major role is the determination of fact.'" Holloway, 57 Va. App. at 664 (quoting Haskins v. Commonwealth, 44 Va. App. 1, 11 (2004)). "If the evidence is sufficient to support the conviction, the reviewing court is not permitted to substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the trier of fact." Jordan v. Commonwealth, 286 Va. 153, 156-57 (2013).

Furthermore, in reviewing the sufficiency of the evidence, we must recognize that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53 (1983). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Holloway, 57 Va. App. at 665 (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13 (1997)). Moreover,

> [i]n considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt."

Id. (alterations in original) (quoting Commonwealth v. Hudson, 265 Va. 505, 513 (2003)).

Finally, "circumstantial evidence is not viewed in isolation." Id. (quoting Hudson, 265 Va. at 514). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. at 666 (quoting Derr v. Commonwealth, 242 Va. 413, 425 (1991)).

Here, upon consideration of all the evidence, the fact finder could have reasonably concluded Addison was, in fact, the killer. Id. Although, as the trial court acknowledged, the video did not capture the murder itself and could not in itself identify the persons shown, the combined force of all the circumstances was sufficient for the trial court to reach its conclusion. By admitting that the silver Nissan Maxima belonged to him and that he was the only person who drove it, Addison identified himself as the person seen in the video at the apartment on the morning of December 20. T-Mobile records show that while Addison's cell phone was in the vicinity of the murder location, he called a coworker minutes after the murder to say Chalkley was dead. From these pieces of evidence, the fact finder could conclude Addison lied when he told an investigator he had not been at the apartment on December 19 or December 20. The fact finder could infer that he lied for a nefarious reason, namely that he was guilty of killing Chalkley. See Rams v. Commonwealth, 70 Va. App. 12, 27 (2019) ("Additionally, in drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt."). The "combined force" of other "concurrent and related circumstances, each insufficient in itself," help "lead a reasonable mind irresistibly to [the] conclusion" that Addison killed Chalkley. Holloway, 57 Va. App. at 666. Those circumstances include Addison ceasing to use his phone after the day of the murder, Addison's car being parked in an alley behind his stepfather's residence, and Addison's statement to a detective that when "you reach out your hand and you get in other people's stuff, in other people's bullshit, and this is what happens." The combined weight of the evidence was sufficient to find Addison guilty.

- 5 -

CONCLUSION

Because the circumstantial evidence was sufficient to establish beyond a reasonable doubt that Addison was the person who killed Chalkley, the trial court did not err in finding Addison guilty.

Affirmed.