COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Coleman and
          Senior Judge Duff
Argued at Alexandria, Virginia


ALLEN ABRAHAM LEBEDUN
                                        OPINION BY
v.        Record No. 0250-97-4     JUDGE SAM W. COLEMAN III
                                        JULY 7, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Marcus D. Williams, Judge

          Crystal A. Meleen, Senior Assistant Public
          Defender (Office of the Public Defender, on
          brief), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Richard Cullen, Attorney General, on
          brief), for appellee.


     Allen Abraham Lebedun appeals his jury trial convictions for

abduction, robbery, and use of a firearm in the commission of

robbery.  Lebedun contends the convictions should be reversed

because (1) the search warrant was not supported by probable

cause and failed to recite the offense for which the search was

being conducted; (2) the general district court erred in refusing

to grant a continuance in order to obtain a court reporter for

the preliminary hearing; (3) the circuit court judge erred by sua

sponte noting the failure of the Commonwealth's evidence to make

an in-court identification of the defendant and by allowing the

Commonwealth to reopen its evidence to prove the defendant's

identity; (4) the circuit court erred by refusing to instruct the

jury that Virginia has abolished parole eligibility in

non-capital cases; (5) the Commonwealth failed to comply with the statutory notice and copy requirements for introducing prior convictions evidence at sentencing; and (6) the evidence is insufficient to support the robbery conviction. For the reasons that follow, we affirm the convictions.

## I. BACKGROUND

Two men wearing masks, wigs, and gloves entered the Medicine Chest Pharmacy in Fairfax County. The taller of the two men went to the pharmacy counter, pointed a firearm at Norman Friedlander, the store manager, and Raza Alborz, the pharmacy technician, and announced that "it was a hold up" and "no one would get hurt if [they didn't] do anything silly." He ordered Alborz and Friedlander to step away from the pharmacy counter. As Friedlander complied, he noticed that the shorter assailant was holding a knife on Jerry Danoff, the pharmacist, and Patrice Lyons, a customer.

Upon learning that Danoff was the pharmacist, the gunman approached Danoff and demanded methadone. Danoff opened the narcotics cabinet and the gunman "started grabbing and filling up [bags]" with packets of narcotics. The gunman then ordered Danoff to lie on the floor and attempted to bind his feet and hands with tape. As Danoff lay on the floor, he heard someone open the cash register. During this time, the shorter assailant, who had been holding a knife on Friedlander, Alborz, Lyons, and customer Helen Gray, ordered them into a storage room, where he

bound them with tape.

Upon hearing the assailants leave the store, the victims freed themselves. Alborz ran outside and observed the assailants entering an automobile. Alborz saw the shorter, knife-wielding assailant remove his mask. Alborz later identified the unmasked assailant from a photo line-up as Worth Myers.

After the robbery, Friedlander determined that narcotics and a small amount of cash were missing from the drug cabinet. Danoff testified that the cash register was "completely empty, missing approximately $400 that was in the register earlier that day." Although appellant was charged with having robbed Friedlander, appellant notes that Friedlander was in the storage area when the robbers took the drugs and money and no money or property was taken from him personally.

Approximately two weeks after the robbery, Fairfax County Police Detective James Agnew executed a search warrant for Worth Myers' home. In Myers' bedroom, Agnew found pieces of tape similar to a ball of tape that he had found behind the pharmacy counter and similar to a roll of tape found in the pharmacy parking lot after the robbery. Agnew also found two Halloween masks. Alborz testified that he recognized both masks as having been worn by the robbers. Friedlander and Lyons testified that they recognized one of the masks as having been worn by the tall gunman.

While Agnew searched Myers' home, Fairfax County Police

Detective Jack Kirk executed a search warrant at Lebedun's apartment. Kirk recovered several bags of prescription drugs, a gun, ammunition, and gloves from Lebedun's bedroom. Kirk testified that one bottle of pills was labeled with a Medicine Chest price sticker. Friedlander testified that some of the drugs recovered from Lebedun's home were the same type as those taken by the robbers. Friedlander, Lyons, and Alborz positively identified the gun found in Lebedun's bedroom as the gun used by the taller assailant.

Robert Russell, an acquaintance of Lebedun, testified that during the three months preceding the robbery Lebedun asked Russell to get him a gun. Russell recounted that Lebedun said he and Myers had "something staked out." Lauran Ipsan, another acquaintance, testified that on the day of or the day after the robbery Lebedun said he and Myers had "done a robbery," that Myers had taken off his mask, and that one of the pharmacy employees had seen Myers.

Lebedun was indicted and convicted for robbery of Friedlander, use of a firearm in the commission of robbing Friedlander, and abducting Lyons and Gray.

## II. THE SEARCH WARRANT

### A. Probable Cause

The Fourth Amendment provides that a search warrant shall issue only upon a showing of probable cause supported by oath or affirmation. See Gwynn v. Commonwealth, 16 Va. App. 972, 974,

434 S.E.2d 901, 903 (1993). Whether probable cause exists to support the issuance of a warrant is to be determined from the "totality of the circumstances" that are presented to the magistrate. Illinois v. Gates, 462 U.S. 213, 238 (1983).

> The task of the issuing magistrate is simply to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> [A]n after-the-fact review of a magistrate's decision should not be made de novo[,] . . . great deference should be given to the magistrate's finding of probable cause.

Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (quoting Gates, 462 U.S. at 238).

In the present case, Detective Agnew's affidavit in support of his request for a warrant to search Lebedun's home stated that a fatal drug overdose had occurred at Myers' apartment, that an informant had purchased prescription drugs from Myers, and that Worth Myers had told the informant how he and Lebedun, while wearing masks, committed a series of armed robberies of pharmacies in Maryland and Virginia. The affidavit further stated that the informant had on other occasions provided the police with information regarding controlled drug purchases and

had been found to be reliable. The affidavit also stated that a victim of one robbery could identify Myers as one of the robbers after having observed Myers when he removed his mask as he left the scene. The affidavit further stated that "Myers gave statements [after his arrest] as to his involvement in the armed robberies of several pharmacies in Maryland and Virginia, against his penal interest. In his statement [Myers] implicated one Allen Lebedun as the second subject in the robberies." Accordingly, the magistrate issued a warrant to search Lebedun's apartment.

Lebedun contends the magistrate lacked probable cause to issue the search warrant because the magistrate's decision was based solely upon the unreliable assertions made by Worth Myers. Lebedun reasons that Myers' assertions were unreliable because he admitted to using and distributing drugs. We find no merit in the argument. The reliability of hearsay statements in an affidavit "may be established by showing that . . . the [declarant] has made a declaration against his penal interest."[1]

_____

[1]Even before the Supreme Court departed from the more rigid Aquillar-Spinelli approach in favor of the "totality of the circumstances" test announced in Gates, the Virginia Supreme Court had held in Manley v. Commonwealth, 211 Va. 146, 150-51, 176 S.E.2d 309, 313 (1970):

> Reliability may be found in an informant's statement of facts as an "eyewitness." In People v. Montague, . . . the reliability standard was said to have been met where the affidavit in sufficient detail established that the informer was speaking with personal knowledge and relating his own participation with that of the suspects in their illegal

*Polston v. Commonwealth*, 24 Va. App. 738, 745, 485 S.E.2d 632, 634 (1997), aff'd on other grounds, ___ Va. ___, 498 S.E.2d 924 (1998).  Myers' admission that he and Lebedun committed the robberies was a statement against his penal interest and, as such, constituted reliable information upon which the magistrate could find probable cause to issue a warrant.  Based on the totality of circumstances presented in the affidavit, the magistrate had a "substantial basis for concluding" that Lebedun committed the robberies with Myers and that evidence relating to the robberies could be found at Lebedun's home.  Accordingly, issuance of the search warrant was supported by probable cause.

(..continued)

> activities.  In the concurring opinion of Mr. Justice White in *Spinelli*, it is said:
>
>> But if for example, the informer's hearsay comes from one of the actors in the crime in the nature of an admission against interest, the affidavit giving this information should be held sufficient.
>
>> Here, the affidavit established that the informant was stating facts based on his own personal knowledge and was relating his participation in defendant's illegal activity.  His statements were admissions against interest.  These facts certainly show a substantial basis for the officer-affiant to state that the informant was reliable and for a neutral and detached magistrate to conclude that the informant's information was reliable and that probable cause existed for the issuance of the warrant.

211 Va. at 150-51, 176 S.E.2d at 313 (citations omitted).

- 7 -

<u>B. Recitation of Offense Pertaining to Search Warrant</u>

Both the Fourth Amendment and Code § 19.2-56 require that a search warrant "recite the offense in relation to which the search is to be made."  Code § 19.2-56; <u>Gilluly v. Commonwealth</u>, 221 Va. 38, 41, 267 S.E.2d 105, 106-07 (1980).  The failure of a warrant to state the related offense renders the warrant "fatally defective" and the evidence seized in the execution of the warrant inadmissible.  <u>Id.</u>

Code § 19.2-56 further provides:  "The judge, magistrate, or other official authorized to issue criminal warrants shall attach a copy of the affidavit required by Code § 19.2-54, <u>which shall become part of the search warrant and served therewith</u>." (Emphasis added).  Although a search warrant should recite on its face the offense being investigated, an attached affidavit which recites the offense provides the necessary notice because the affidavit "become[s] part of the search warrant."  A search warrant sufficiently "recites the offense" if the affidavit attached to it specifies the offense to which the warrant pertains.  However, a search warrant does not recite the offense and is "fatally defective," where "the evidence below <u>establishe[s] conclusively</u> that [the facially deficient warrant and the affidavit that did recite the offense] were not attached until <u>after</u> the search warrant had been executed and the disputed items seized."  <u>Gilluly</u>, 221 Va. at 41, 267 S.E.2d at 107 (first emphasis added).

Relying on Gilluly, Lebedun contends the evidence fails to show that the deficient warrant and affidavit were attached or that they were attached when the search occurred.  Without dispute, the warrant failed to recite the offense, but the affidavit expressly stated that the search pertained to charges of robbery and abduction.  Thus, a critical fact is whether the warrant and affidavit were attached when the warrant was executed.

At the suppression hearing, Detective Kirk testified regarding his execution of the search warrant:

> COMMONWEALTH'S ATTORNEY:  Now, when you state that you executed [the search warrant], tell His Honor what you did.
>
> DETECTIVE KIRK:  I noted the time that we made entry into the house.  I executed the warrant by signing my name to it where it says, execution.  At the end of our investigation at the residence I left a copy of the warrant on the table in the dining room/kitchen area of the residence.
>
> COMMONWEALTH'S ATTORNEY:  Now, when you say a copy of the warrant . . . [you mean] not only of the search warrant itself, but the affidavit.
>
> DETECTIVE KIRK:  Yes, sir.
>
> COMMONWEALTH'S ATTORNEY:  Now, did you leave both of those items at [Lebedun's residence]?
>
> DETECTIVE KIRK:  Yes, sir, we always do.  We always leave the affidavit with the copies of the search warrant itself.
>
> *       *       *       *       *       *       *

– 9 –

COMMONWEALTH'S ATTORNEY:  What was the status [of the search warrant and accompanying affidavit] when you left those at the apartment?

DETECTIVE KIRK:  They were paper clipped together.

COMMONWEALTH'S ATTORNEY:  Paper clipped?

DETECTIVE KIRK:  Yes; we paper clip them together and leave a copy at the scene.

   *      *      *      *      *      *      *

COMMONWEALTH'S ATTORNEY:  Was there anybody present besides police officers when you left those items . . . in that apartment?

DETECTIVE KIRK:  There was no one present inside the house at the time.

On cross-examination, Detective Kirk explained:

DEFENSE COUNSEL:  Were [the search warrant and the affidavit] ever stapled together or in any way permanently attached to one another?

DETECTIVE KIRK:  They were paper clipped together.

The evidence did not expressly prove whether the search warrant and affidavit were attached or "paper clipped together" at the time the search warrant was executed.  Thus, the dispositive issue is whether on the motion to suppress the Commonwealth had the burden of proving that the affidavit was attached or the defendant had the burden of proving that it was not.  We find no Virginia case allocating the burden of proof when the defendant moves to suppress evidence that was seized pursuant to a search warrant.

With respect to . . . the reasonableness of

> the challenged search or seizure . . . most
> states follow the rule which is utilized in
> the federal courts:  if the search or seizure
> was pursuant to a warrant, the <u>defendant</u> has
> the burden of proof; but if the police acted
> without a warrant the burden of proof is on
> the <u>prosecution</u>.

4 Wayne R. LaFave, <u>Search and Seizure</u> § 11.2(b) at 218 (2d ed. 1987) (emphasis added).  <u>See, e.g.</u>, <u>United States v. Cahree</u>, 27 F.3d 1493, 1496 (10th Cir. 1994); <u>United States v. Roch</u>, 5 F.3d 894, 897 (5th Cir. 1993); <u>United States v. Longmire</u>, 761 F.2d 411, 417 (7th Cir. 1985); <u>State v. Slaughter</u>, 315 S.E.2d 865 (Ga. 1984); <u>State v. Brown</u>, 333 A.2d 264, 267 (N.J. Super. Ct. App. 1975); <u>Malcolm v. United States</u>, 332 A.2d 917, 918 (D.C. App. 1975); <u>State v. Wilcutt</u>, 526 P.2d 607, 608-09 (Or. App. 1974); <u>Morales v. State</u>, 170 N.W.2d 684, 687 (Wis. 1969).  Because search warrants are favored, and warrantless searches are presumptively invalid under the Fourth Amendment, <u>see</u> <u>Commonwealth v. Ealy</u>, 12 Va. App. 744, 751-52, 407 S.E.2d 681, 686 (1991), we find the warrant/no warrant dichotomy to be a logical basis for allocating the burden of proof when ruling on motions to suppress.  Thus, the government bears the burden to justify a warrantless search as an exception to the warrant requirement.  <u>See</u> <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971).  However, a presumption of validity attaches when a search is conducted pursuant to a warrant issued by a neutral and detached magistrate or judicial officer.  <u>See</u> <u>Brown</u>, 333 A.2d at 267; <u>Malcolm</u>, 332 A.2d at 918.  Therefore, where the police

conduct a search pursuant to a judicially sanctioned warrant, the defendant must rebut the presumption of validity by proving that the warrant is illegal or invalid.  See id.; Wilcutt, 526 P.2d at 608-09; see also Longmire, 761 F.2d at 417.  We adopt the well-reasoned rule applied by the federal courts and the majority of our sister states.

Here, because the evidence was seized pursuant to a judicially issued search warrant, Lebedun had the burden of proving that the search warrant was invalid.  In order to prove that the warrant was invalid and thereby necessitated suppression of the evidence, Lebedun had the burden of proving that the warrant and the affidavit were not attached when the warrant was executed.  As noted, Lebedun failed to meet this burden.  After Detective Kirk testified that the search warrant and affidavit were attached when he "left the apartment," Lebedun did not establish whether they were attached before or after the warrant was executed.  Lebedun had the opportunity to elicit this information during Detective Kirk's cross-examination but declined to do so.  We hold that Lebedun failed to meet his burden of proving that the warrant did not recite the offense in relation to which the search was conducted.  Therefore, the trial court did not err in denying Lebedun's motion to suppress the seized evidence.

III.  GENERAL DISTRICT COURT'S DENIAL OF MOTION FOR A CONTINUANCE

The circuit court granted Lebedun's in forma pauperis motion

to provide a court reporter to record and transcribe the testimony at the preliminary hearing. However, the court reporter did not appear at the preliminary hearing. After advising the general district court judge that a court reporter had been authorized to transcribe the hearing and was not present, Lebedun made a motion for a continuance of the preliminary hearing. Apparently, no effort was made to obtain the services of another court reporter. The Commonwealth objected to a continuance, noting that seven witnesses were present and prepared to testify. The general district court denied the motion for continuance. Lebedun's counsel tape recorded the preliminary hearing, but, according to Lebedun, several portions of the witnesses' testimony were inaudible or incomplete. On appeal, Lebedun asks us to dismiss the indictment and remand the case to the general district court for a preliminary hearing with a court reporter.

"The decision whether to grant a continuance is a matter within the sound discretion of the trial court." Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990). The Virginia Supreme Court has established a two-pronged test for determining whether a trial court's denial of a continuance request is reversible error. Under this test, we may reverse a trial court's denial of a motion for a continuance only if it appears from the record: (1) that the court abused its discretion and (2) that the movant was prejudiced by the court's

decision.  See Cardwell v. Commonwealth, 248 Va. 501, 509, 450
S.E.2d 146, 151 (1994).

The function of a preliminary hearing is to determine before
a judicial officer whether probable cause exists to believe that
an accused may have committed a criminal offense and whether
reason exists for a grand jury to investigate the charges.  See
Webb v. Commonwealth, 204 Va. 24, 31, 129 S.E.2d 22, 38 (1963).
A preliminary hearing is not a vehicle for an accused to conduct
discovery.  See Williams v. Commonwealth, 208 Va. 724, 729, 160
S.E.2d 781, 784 (1968).

Although a preliminary hearing is not constitutionally
mandated, an accused who has been arrested on a felony warrant is
statutorily entitled to a preliminary hearing.  See Code
§ 19.2-218.  Because a transcript of the preliminary hearing may
be an effective tool for cross-examining and impeaching witnesses
at trial, see Harley v. Commonwealth, 25 Va. App. 342, 348-50,
488 S.E.2d 647, 649-50 (1997), the circuit court authorized
Lebedun to employ a court reporter.  See Roberts v. LaVallee, 389
U.S. 40, 42-43 (1967) (per curiam); Code § 19.2-185.  However,
the responsibility for employing the court reporter and having
the court reporter present rested with Lebedun.  Lebedun did not
have a court reporter present for the scheduled preliminary
hearing and offered no justification other than that the court
reporter had not appeared.  Lebedun could not determine when a
court reporter would be available or whether one could be

- 14 -

available that day.

Here, the general district court did not abuse its discretion in denying the motion for a continuance. The Commonwealth had committed to provide Lebedun a court reporter. As with a non-indigent defendant, the court must determine whether a party has shown good cause for not having a court reporter present for a scheduled preliminary hearing. In ruling upon a motion for a continuance, a court may properly consider the convenience of the witnesses who are prepared to testify at the scheduled proceeding. See Ex Parte Windham, 634 S.W.2d 718, 720-21 (Tex. Crim. App. 1982); Phifer v. State, 218 N.W.2d 354, 356-58 (Wis. 1974). The Commonwealth had seven witnesses present to testify at the preliminary hearing, several of whom had been subpoenaed to appear. Because the appellant could not determine that a court reporter could be available that day, the witnesses would likely have been required to reappear to testify on another date. The appellant did not give a justifiable reason why he did not have a court reporter present.

Furthermore, Lebedun has not demonstrated that the lack of a transcript of the preliminary hearing denied him the opportunity to assess the strength of the Commonwealth's case or was essential for him to impeach the witnesses at trial. See Edwards v. Commonwealth, 19 Va. App. 568, 572, 454 S.E.2d 1, 3 (1995). Lebedun was allowed to tape record the testimony of the witnesses at the preliminary hearing and could have taken notes of the

proceedings.  See Code § 16.1-69.35:2.  After the circuit court

authorized Lebedun to employ a court reporter, the responsibility

for employing a reporter and having the reporter present rested

with the appellant.  Although Lebedun may have been

inconvenienced by the lack of a transcript, he has not shown that

he was prejudiced by not having a transcript of the preliminary

hearing.  See Bird v. Peyton, 287 F. Supp. 860, 862-63 (W.D. Va.

1968).  We find that, under the circumstances, the general

district court's denial of the motion for a continuance was not

an abuse of discretion.  Accordingly, we decline to dismiss the

indictment and remand the case to the general district court for

a preliminary hearing.

### IV.  REOPENING OF THE COMMONWEALTH'S CASE

Lebedun made a motion to strike the evidence on the ground

the Commonwealth failed to prove the requisite elements of

robbery.  After discussing and denying Lebedun's motion, the

trial court inquired:  "[B]efore we proceed[,] where is the

identification of the defendant as the person who did this, in

Court identification?"  The court further stated:

> I believe you got to make an in Court --
> you still got to link the name -- you've got
> a name in evidence, but you've got to say
> this is the person is -- I mean you could do
> it through the witnesses who know him.  They
> can say that's Mr. Lebedun.
> It doesn't have to be the people at the
> robbery, but I think you got to have somebody
> to say this is the person.

The court then permitted the Commonwealth, over Lebedun's

- 16 -

objection, to reopen its case to make an in-court identification of Lebedun. Lebedun contends the court erred in permitting the Commonwealth to reopen its case and in raising the issue sua sponte.

"[T]he order of proof is a matter within the sound discretion of the trial court and [an appellate] court will not reverse the judgment except in very exceptional cases, and, unless it affirmatively appears from the record that this discretion has been abused, [an appellate] court will not disturb the trial court's ruling." Hargraves v. Commonwealth, 219 Va. 604, 608, 248 S.E.2d 814, 817 (1978).

Hargraves is controlling on this issue. In that case, after the Commonwealth presented its case, the defendant made a motion to strike the evidence on the ground that he had not been identified as the perpetrator. Id. at 606, 248 S.E.2d at 816. "After expressing doubt as to the sufficiency of the Commonwealth's evidence," the trial court permitted the Commonwealth to reopen in order to present a witness who identified the defendant as the perpetrator. Id. at 607, 248 S.E.2d at 816. The Virginia Supreme Court held that the trial court had broad discretion to control the order of evidence before it and did not abuse its discretion in permitting the Commonwealth to reopen its case to present additional evidence. Id. at 608, 248 S.E.2d at 817. Here, as in Hargraves, the trial court did not abuse its discretion by allowing the Commonwealth

to reopen its case to make an in-court identification of Lebedun. Moreover, contrary to Lebedun's assertion, the trial judge did not transgress his role as an impartial arbiter by commenting sua sponte upon the identification issue. See Students of Calif. School for the Blind v. Honig, 736 F.2d 538, 548-49 (9th Cir. 1984), vacated on other grounds, 471 U.S. 148 (1985). Although the trial judge is a neutral and impartial arbiter and should not abandon that role by becoming an advocate, the trial judge is not required to sit idly and observe a miscarriage of justice occur because one party inadvertently overlooks establishing a routine element of proof. The trial court did not abuse its discretion by raising the issue or by permitting the Commonwealth to reopen its case to identify Lebedun.

## V. REFUSAL TO INSTRUCT JURY ON THE ABOLITION OF PAROLE ELIGIBILITY IN NON-CAPITAL CASES

During deliberations, the jury sent the trial judge a note inquiring:  "What is the Virginia Parole law, if any?"  Over Lebedun's objection, the trial judge responded that the jury "should not concern [them]selves with . . . these matters." Lebedun contends the trial judge erred and should have told the jury that he was ineligible for parole under Virginia law.

Our disposition of this issue is controlled by Briscoe v. Commonwealth, 26 Va. App. 415, 494 S.E.2d 898 (1998). Recognizing that courts are not required to instruct the jury on a defendant's eligibility for parole in non-capital cases, see Walker v. Commonwealth, 25 Va. App. 50, 66, 486 S.E.2d 126, 134 (1997); Mosby v. Commonwealth, 24 Va. App. 284, 286, 482 S.E.2d 72, 72 (1997), Briscoe held that a trial court does not err by refusing to answer a jury's questions regarding parole eligibility.  26 Va. App. at 417, 494 S.E.2d at 899. Accordingly, the trial judge did not err when he informed the jury that it was "not to concern [them]selves" with whether Lebedun was eligible for parole.

## VI. NOTICE OF INTENT TO INTRODUCE PRIOR CONVICTIONS

More than a month before trial, the Commonwealth notified Lebedun's counsel that it intended to introduce at sentencing an August 2, 1977 Fairfax County conviction for robbery.  The related order provided by the Commonwealth showed the date of conviction to be August 27, 1976.  The Commonwealth also gave

notice of its intention to introduce evidence of four convictions in Montgomery County, Maryland in January 1977, which included two convictions for robbery and two convictions for use of a firearm in the commission of a felony. The Maryland records provided by the Commonwealth to Lebedun's counsel indicated that on appeal the 1977 convictions were reversed and remanded and that Lebedun was retried and convicted on the same charges in 1979.

Code § 19.2-295.1 requires that at the sentencing phase of a bifurcated trial the Commonwealth provide notice of its intention to introduce evidence of the defendant's prior convictions. The notice shall include "the date of each prior conviction." Code § 19.2-295.1. The statute further provides that "[p]rior to the commencement of the trial, the Commonwealth shall provide to the defendant photocopies of certified copies of the defendant's prior criminal convictions which it intends to introduce at sentencing." Id.

Lebedun argues that the trial court erred by permitting the Commonwealth to introduce the prior conviction orders at sentencing because the Commonwealth erroneously stated the dates of the respective convictions in its notice to defense counsel. Thus, he contends, because the Commonwealth failed to strictly comply with the notice provisions of Code § 19.2-295.1, the case must be remanded for resentencing. We disagree.

Code § 19.2-295.1 is "procedural in nature" and "does not

convey a substantive right."  Riley v. Commonwealth, 21 Va. App.
330, 337-38, 464 S.E.2d 636, 638-39 (1994).  As such, the
statute's notice provisions are merely directory, and "precise
compliance [was] not . . . essential to the validity of the
proceedings. . . ."  Commonwealth v. Rafferty, 241 Va. 319, 324,
402 S.E.2d 17, 20 (1991) (citation omitted).  The purpose of the
notice provisions of Code § 19.2-295.1 is to provide defense
counsel with the opportunity to know in advance what convictions
the Commonwealth intends to introduce and to investigate their
validity.  Although the Commonwealth's notices incorrectly stated
the dates of the actual convictions, the Fairfax County
conviction order and the Maryland documentation apprised Lebedun
of the convictions that would be proven and the correct
conviction dates.  Lebedun does not contend that the convictions
never occurred or that he could not ascertain whether the
conviction record was accurate.  The Commonwealth's failure to
strictly comply with the procedural requirements of Code
§ 19.2-295.1 violated no substantive right and did not prejudice
Lebedun's ability to contest the validity of the convictions.
Therefore, the trial court did not err in admitting proof of the
prior convictions.

## VII.  SUFFICIENCY OF THE EVIDENCE - ROBBERY

Lebedun next contends the evidence is insufficient to
support the robbery conviction.  Upon familiar principles of
appellate review, we will not disturb the jury's verdict unless

- 21 -

it is plainly wrong or without evidence to support it.  <u>Traverso v. Commonwealth</u>, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed in the light most favorable to the Commonwealth, and granting to it all reasonable inferences fairly deducible therefrom, supports each and every element of the charged offense.  <u>See</u> <u>Higginbotham v. Commonwealth</u>, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation."  <u>Pierce v. Commonwealth</u>, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964).  When one takes property "from the presence of a person whose right to possession is superior to that of the [robber], the robbery is complete."  <u>Clay v. Commonwealth</u>, 13 Va. App. 617, 619, 414 S.E.2d 432, 433 (1992).

Here, the indictment alleged that Lebedun robbed Friedlander.  The Commonwealth did not charge that Lebedun robbed any other pharmacy employee.  Lebedun contends that because Friedlander was sequestered in the storage room before Lebedun took any of the drugs or money the evidence failed to prove that he took property "from [Friedlander's] person or in [Friedlander's] presence."[2]  The argument is without merit.

_____

[2]Appellant does not contend the evidence is insufficient to identify him as one of the perpetrators of the robbery.  Instead, he argues that, at most, the evidence proved that he robbed Danoff and not Friedlander, as the indictment alleged.

"The phrase 'of the personal property of another, from his person or in his presence' has been broadly construed to include the taking of property from the custody or . . . the constructive possession of another." Bunch v. Commonwealth, 225 Va. 423, 440, 304 S.E.2d 271, 280 (1983). As the store manager, Friedlander was the custodian of the pharmacy's drugs and money, was in constructive possession of those items, and clearly had a right to possession of the property superior to that of Lebedun. See Sullivan v. Commonwealth, 16 Va. App. 844, 848, 433 S.E.2d 508, 510–11 (1993). The evidence proved that Lebedun and Myers threatened Friedlander with dangerous weapons, forced him away from the pharmacy counter and into a storage room, and took drugs and money from the narcotics cabinet and cash register behind the counter. These facts sufficiently established that Lebedun took the property from Friedlander's custody. See Bunch, 225 Va. at 440, 304 S.E.2d at 280 (property taken from victim's custody where defendant brutally beat victim in her home and alleged to have taken property from another part of residence); see also Person v. Commonwealth, 10 Va. App. 36, 40, 389 S.E.2d 907, 910 (1990) (property taken from victim's presence where victim forcibly transported from her car to another car and held down by one assailant while other assailant entered victim's car and took money from glove compartment). Accordingly, the evidence is sufficient to support the robbery conviction.

For these reasons, we affirm the convictions.

<u>Affirmed.</u>