## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia

    v.

Calbin Brown

November 2, 2007

Case No. CF07000427

BY JUDGE LISA B. KEMLER

Before the Court is the defendant's Motion to Enjoin/Dismiss and the Commonwealth's opposition thereto. Evidence and argument was presented at a hearing on October 25, 2007, and the Court took the matter under advisement in order to review a DVD of an interview between the defendant and Detective Casey of the Alexandria Police Department.

*Facts*

The defendant, Calbin Brown, was arrested on August 28, 2007, and charged with the felony offense of unauthorized use of a vehicle ("UUV"), felony attempted receipt of stolen property, and obstruction of justice. On September 17, 2007, the day of the preliminary hearing, the defendant waived his right to a preliminary hearing pursuant to the terms of a plea agreement with the Commonwealth as memorialized in a letter from the Commonwealth to defense counsel dated September 12, 2007, and verbally accepted by defense counsel on the defendant's behalf. The agreement provided, in pertinent part:

The defendant will waive his right to a preliminary hearing on the grand larceny auto charge. The Commonwealth will indict one count of felony unauthorized use of a vehicle and no other charges relating to the offense. By October 1st, the defendant will meet with Detective Sean Casey of the Alexandria Police Department for the purpose of [the defendant] providing the identity of the driver and the truth surrounding the facts and circumstances of the case.

In addition, under the terms of the agreement, the defendant would be granted use immunity as to any statements he made concerning the offense and his involvement, and, if called to testify, the defendant agreed he would provide truthful testimony. Finally, the agreement contemplated that the defendant's case would be continued until the driver's case is concluded and, once so concluded, if the defendant had met his obligations under the plea agreement, the Commonwealth would move to amend the felony UUV charge to a misdemeanor. (*See* Commonwealth's Exhibit 2.)

Following the defendant's waiver of the preliminary hearing, the defendant, along with his counsel, met with Detective Casey. This interview, which only lasted a short time, was recorded. (Commonwealth's Exhibit 1.) Detective Casey testified that it was his understanding that the defendant would provide the driver's first and last name, as well as everything he knew about the case. The defendant provided a description of the driver of the car, what he believed to be the driver's nickname, and the location where the driver hangs out, but told the detective that he did not know the name of the driver. Subsequent to the interview, there was an exchange of e-mail communication between the Commonwealth and defense counsel regarding whether, in the Commonwealth's view, the defendant had violated the terms of the plea agreement by not providing the name of the driver of the stolen vehicle. (A copy of the e-mails were forwarded to the Court following the hearing on the motion and have been designated "Court's Exhibit A.")

In response, defense counsel expressed to the Commonwealth the belief that there had been a "misunderstanding" of the terms of the agreement and that defense counsel understood that the defendant was obligated to assist the detective "in ascertaining the driver's identity, not that he would provide a name." (Court's Exhibit A, p. 1.) Defense counsel also informed the Commonwealth that the defendant did not know the driver's name, but that the defendant remained willing to try to assist the detective, including looking at a photo spread and driving around the neighborhood to try to locate the driver. The Commonwealth responded to defense counsel in an e-mail on

September 20, 2007, at 2:23 p.m., offering the defendant another opportunity to meet with the detective and that the defendant would have to answer "specific questions regarding the events leading up to his arrest." (Court's Exhibit A, p. 3.) In the e-mail to defense counsel, the Commonwealth outlined the specific questions the defendant would have to answer, to wit "who he was with before he was arrested, what he was doing before he got into the stolen car, exactly how the conversation went down regarding getting into the car, and a very specific description of the driver." (Court's Exhibit A, p. 3.) The Commonwealth also wrote that the defendant "will also be asked to view one or more photo spreads" and "will be asked to visit the neighborhood where he was and point out where [the driver] hangs out." *Id.* Defense counsel responded to the Commonwealth's e-mail at 3:06 p.m. on September 20, 2007, accepting the Commonwealth's terms.

Thereafter, on September 25, 2007, the defendant, along with defense counsel, met with Detective Casey in an interview room at the Alexandria Police Department. This interview was recorded and lasted approximately forty minutes. (See Commonwealth's Exhibit 3.) During this interview, the defendant gave the detective a more detailed physical description of the driver, identified the individuals with whom he hangs out and the location where they hang out, where they were hanging out on the day of the stolen car incident, the location where he saw the driver, how he came to get into the car, and identified a photograph of another individual identified as Dennis Owen, a/k/a "DJ" or "Bubba." Detective Casey testified that it appeared to him that sometimes the defendant was being truthful and sometimes he was not. He based this on the fact that he had to ask the defendant more than once for Tracey Stanton's full name, that the defendant claimed to not know the full name of "Derrick," a/k/a "Dirky," even though he and the defendant had been life long friends, and because the defendant did not have a good reason for why Dennis Owen would have called his cell phone multiple times after the defendant was arrested, and, in addition, the defendant was reluctant to have the detective talk to the friends with whom he was hanging out and was reluctant to talk to his friends himself about the identity of the driver. Believing that the defendant was not fulfilling his obligations under the plea agreement, the Commonwealth obtained an indictment charging the defendant with UUV and seeks to prosecute him on this felony.

Arguing that the defendant relied to his detriment on the oral plea agreement, that is he waived his right to a preliminary hearing, the defense seeks to enjoin the Commonwealth from breaching the agreement. In other words, the defendant seeks specific performance of the plea agreement. In the alternative, the defense requests that the Court dismiss the indictment and

remand the matter to General District Court for a preliminary hearing. In opposition, the Commonwealth argues that the defendant's fulfillment of his obligation to cooperate against the driver, including providing the identity of the driver (the name), was a condition precedent to enforcement of the agreement. It is the Commonwealth's position that the defendant, in failing to provide the name of the driver, failed to meet the condition precedent and, therefore, the agreement is void and unenforceable. Additionally, the Commonwealth contends that the defendant "suffered no detrimental reliance of any constitutional or even practical consequence." Commonwealth's Response to Defendant's Motion to Enjoin/Motion to Dismiss at 5. The Commonwealth also opposes dismissal of the indictment arguing that, because "the defendant waived his right to a preliminary hearing pursuant to Va. Code § 19.2-218 and the charge was presented to the grand jury," he "was not denied his statutory right to a probable cause determination". *Id.* at 7.

*Ruling*

Although a preliminary hearing is not constitutionally mandated, an accused who has been arrested on a felony warrant is statutorily entitled to a preliminary hearing. Va. Code § 19.2-218; *Lebedun v. Commonwealth*, 27 Va. App. 697, 713, 501 S.E.2d 427 (1998). It is true that an accused can waive his right to a preliminary hearing under Va. Code § 19.2-218; however, in this case, the defendant specifically waived his right in reliance on the plea agreement. In *Watkins v. Commonwealth*, 25 Va. App. 646, 491 S.E.2d 755 (1997), the Court of Appeals discussed the grounds upon which a plea agreement may be enforced prior to the entry of a guilty plea. Specifically, the Court noted that implication of the defendant's constitutional rights is "not always, necessarily, the basis for compelling enforcement of plea agreements." *Id.* at 653. The *Watkins* Court held that "where a plea agreement calls for performance by the defendant and the defendant has performed pursuant to the terms of the agreement, the agreement will be enforced." *Id.* at 653. Moreover, there is "no authority to support a qualitative analysis of a defendant's performance," rather "the terms of the parties' agreement best define their respective performance obligations." *Id.*

As to the terms of the plea agreement in the case at bar, originally, the agreement required that the defendant provide the "identity" of the driver of the stolen vehicle. (Commonwealth's Exhibit 2.) The Commonwealth understood this to mean the actual name of the driver. The defense understood this to mean information to assist the detective in ascertaining the driver's identity. Court's Exhibit A, p. 1. After the first interview, defense counsel

made clear that the defendant did not know the driver's name and, in response, the defendant's obligation was modified, in part, to provide instead "a very specific description" of the driver. The defendant did so. Under these circumstances, the defendant is entitled to have the agreement enforced. Accordingly, the defendant's motion to enjoin or to specifically enforce the agreement is granted.