COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.      Record No. 0818-10-1

CHRISTOPHER HAHNS BOYD, S/K/A
  CHRISTOPHER PERRY-BOYD

MEMORANDUM OPINION[*] BY
JUDGE D. ARTHUR KELSEY
NOVEMBER 5, 2010

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Charles E. Haden (Michael P. King; Hampton-York Law
Center, P.C., on brief), for appellee.

The Commonwealth appeals a pretrial order granting a motion to suppress incriminating

evidence discovered during an encounter with Christopher Hahns Boyd.  We agree the trial court

erred as a matter of law.  We thus reverse the suppression order and remand the case for trial.

I.

Though the "ultimate question" whether a police officer has violated the Fourth

Amendment triggers *de novo* appellate scrutiny, Kyer v. Commonwealth, 45 Va. App. 473, 479,

612 S.E.2d 213, 216-17 (2005) (*en banc*), we take up that issue "only after the relevant historical

facts have been established," Logan v. Commonwealth, 47 Va. App. 168, 171, 622 S.E.2d 771,

772 (2005) (*en banc*).

One late afternoon in June 2009, Officer J.L. Sorg observed a vehicle driven by Boyd

come to a stop and park on the side of a road in Newport News.  The officer parked behind Boyd

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

but did not activate any lights or sirens on his marked patrol vehicle. The officer walked up to Boyd, still seated in the driver's seat of his vehicle, and engaged him in conversation.

The officer and Boyd gave varying accounts of the conversation.[1] In its ruling, the trial court resolved the evidentiary conflict by finding: "In this case, now it's consensual in the beginning. [The officer] walks up and says, 'How are you guys doing? May I see some I.D.?'" At no point in this encounter did the officer display his weapon, physically touch Boyd, advise Boyd he could not ignore his questions, order Boyd out of the vehicle, or warn Boyd he was not free to leave.

After Boyd provided the officer with his I.D. card, the officer radioed his dispatch to check on Boyd's identity and learned his license had been suspended.[2] As the officer began writing an arrest summons for driving on a suspended license, another officer arrived on the scene to walk a drug detection dog around Boyd's vehicle. When the dog alerted, indicating the odor of narcotics, the officer searched the vehicle and discovered a loaded handgun under Boyd's seat.

---

[1] In his testimony, Boyd initially suggested the officer asked him for his driver's license. Boyd later clarified the point after the prosecutor asked: "I'm asking you, you said the first words out of his mouth were, 'Why did you pull over? Do you not have a license,' And then he asked you for something. Did he ask you for your license, or did he ask you for I.D.?" In reply, Boyd testified, "I believe it was for my I.D." App. at 35. This confused portion of the narrative, however, is legally immaterial given that Boyd did not have a driver's license, a fact the officer soon discovered.

Boyd also testified that he volunteered to the officer, "I don't have a license." App. at 32. On brief, Boyd reaffirms this testimony and concedes he "came clean and admitted he did not have a driver's license" prior to offering his identification. Appellee Br. at 20. By itself, this admission demonstrates the officer had probable cause at that very moment to arrest Boyd under Code § 46.2-300 for operating a motor vehicle without a valid driver's license. Given our holding, however, we do not address this issue further.

[2] Boyd testified "a few moments" had passed before the officer said he could issue "a summons for driving under suspension." App. at 33. The officer testified he radioed dispatch while standing "three steps back from the door of the vehicle." Id. at 13.

The trial court began the suppression hearing by asking the prosecutor, "Who's your first witness." App. 7. The prosecutor responded, "Well, Your Honor, this is a defense motion. The defendant has a burden of producing a . . . ." Id. "Interesting theory," the court interrupted, "Who's your first witness?" Id. At the end of the hearing, the court restated its understanding of the governing burden of proof: "So we can kind of be clear in the beginning, the Commonwealth has the burden to show the evidence was seized. The defendant doesn't have a burden to prove otherwise." App. at 60.

Viewing the evidence from this prism, the trial court held the officer's retention of Boyd's I.D. card amounted to a seizure of Boyd in violation of the Fourth Amendment. All of the incriminating evidence later obtained, the trial court ruled, must be suppressed. Contending the court erred as a matter of law, the Commonwealth appealed this interlocutory ruling pursuant to Code § 19.2-398.

## II.

Under settled principles, the defendant seeking to suppress incriminating evidence must "as the moving party, go forward with evidence in support of his motion." Fitzgerald v. Commonwealth, 223 Va. 615, 627, 292 S.E.2d 798, 804 (1982). He "alone bears the 'burden of proving' factual circumstances giving rise to a reasonable expectation of privacy," Logan, 47 Va. App. at 171 n.2, 622 S.E.2d at 776 n.2 (citation omitted), as well as the burden of proof on the question "whether a seizure occurred," 6 Wayne R. LaFave, Search & Seizure § 11.2(b), at 48-49 (4th ed. 2004) (citation omitted).

It is only after the defendant makes this *prima facie* case that "the burden shifts to the Commonwealth to show that there was a warrant, or that exigent circumstances, consent or some other condition obviated the need for a warrant." John L. Costello, Virginia Criminal Law & Procedure § 41.2[2], at 633 (4th ed. 2008) (footnote omitted); see generally Lebedun v.

Commonwealth, 27 Va. App. 697, 711, 501 S.E.2d 427, 434 (1998) (holding the Commonwealth "bears the burden to justify a warrantless search as an exception to the warrant requirement").

Boyd thus bore the burden of proving his encounter with the officer constituted a seizure under the Fourth Amendment. Taking into account the trial court's factual findings and viewing all other facts in the light most favorable to Boyd, we hold Boyd failed as a matter of law to prove the officer seized him merely by asking for and temporarily retaining his I.D. card.

Consistent with the Fourth Amendment, "officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008). A consensual encounter "does not require any justification and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004). Thus, officers need not have any particularized suspicion to approach "individuals on the street or in other public places" and then put "questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Barkley v. Commonwealth, 39 Va. App. 682, 691-93, 576 S.E.2d 234, 238-39 (2003).

Likewise, "interrogation relating to one's identity or a *request for identification* by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984) (emphasis added). Thus, "a police request made in a public place for a person *to produce some identification*, by itself, generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (emphasis added and citation omitted). So long as officers refrain from inducing "cooperation by coercive means," they need no suspicion of criminality to "pose questions" and "ask for identification" from a citizen. Drayton, 536 U.S. at 201 (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)); see McLellan v. Commonwealth, 37 Va. App. 144, 153, 554 S.E.2d 699, 703 (2001).

It necessarily follows that if an officer does not seize a citizen simply by asking him to produce identification, a seizure cannot arise merely because the citizen agrees to do so. See, e.g., McCain, 261 Va. at 491, 545 S.E.2d at 545-46 (finding no seizure where officer requested and temporarily retained identification); McLellan, 37 Va. App. at 152-54, 554 S.E.2d at 703-04;[3] see also United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002); United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992).

The reasonable-person test, after all, "presupposes an *innocent* person," Bostick, 501 U.S. at 438 (emphasis in original), "rather than one laboring under a consciousness of guilt," Malbrough, 275 Va. at 169, 655 S.E.2d at 4. Framed this way, the test guarantees Fourth Amendment protections do not "vary with the state of mind of the particular individual being approached." Baldwin v. Commonwealth, 243 Va. 191, 197, 413 S.E.2d 645, 648 (1992) (citations omitted); Barkley, 39 Va. App. at 692, 576 S.E.2d at 239 (citation omitted).

A seizure occurs only when an innocent person would reasonably conclude that an officer's "physical force or show of authority" has taken away the person's freedom to leave. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). And that conclusion cannot be made merely because of the presence of several armed officers, Drayton, 536 U.S. at 204-05, or the failure of the officers to inform the person that he is free to ignore further questioning, Delgado, 466 U.S. at 216, or their failure to tell the individual he is free to leave, Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Delgado, 466 U.S. at 216.

---

[3] These binding precedents supersede any contrary view expressed by Piggot v. Commonwealth, 34 Va. App. 45, 537 S.E.2d 618 (2000). As we recently explained, "the

Here, judged against these principles, the officer's initial encounter with Boyd cannot be fairly characterized as a seizure under the Fourth Amendment. The officer walked up to a parked car and asked Boyd, the driver, if he would produce his I.D. Boyd did so. The officer did not physically touch Boyd, make any threats, draw any weapons, or engage in any aggressive display of authority. Nor did he attempt to block Boyd's vehicle or obstruct his ability to drive. At no point, moreover, did Boyd ask the officer to return his I.D. card or say anything suggesting he wanted to discontinue the conversation.

When the dispatcher advised the officer that Boyd had no license to operate a vehicle, the officer had probable cause to arrest Boyd under Code § 46.2-301. At that point, the officer had lawful authority to detain Boyd while the officer prepared the arrest summons. See Virginia v. Moore, 553 U.S. 164, 167 (2008); Smith v. Commonwealth, 30 Va. App. 737, 742, 519 S.E.2d 831, 833 (1999) ("Code § 19.2-74 clearly permits an officer to detain an alleged violator or take the alleged violator into custody long enough to issue a summons."). During this period of lawful detention, the police dog alerted to the presence of the odors of narcotics — thus providing the officer with probable cause to search Boyd's vehicle under the automobile exception to the warrant requirement.[4] See, e.g., Alvarez v. Commonwealth, 24 Va. App. 768, 773-76, 485 S.E.2d 646, 648-50 (1997).

III.

Because the trial court erred by granting Boyd's motion to suppress, we reverse the suppression order and remand for trial.

Reversed and remanded.

---

Supreme Court's ruling in McCain, not Piggott, controls our decision." McLellan, 37 Va. App. at 154, 554 S.E.2d at 704.

[4] See generally Maryland v. Dyson, 527 U.S. 465, 467 (1999) (*per curiam*); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (*per curiam*).